```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                      ATHENS DIVISION
```

GREAT LAKES INSURANCE SE,                *
*formerly known as Great Lakes
Reinsurance (UK) SE*,                    *

    Plaintiff,                       *

vs.                                      *       CASE NO. 3:15-CV-123 (CDL)

CHARLES QUEEN,                           *

    Defendant.                       *

_____

## O R D E R

Defendant Charles Queen was insured under a homeowners insurance policy issued by Plaintiff Great Lakes Insurance SE. One of Queen's outbuildings was destroyed in a fire, and Queen made a claim under the policy to recover for the damage to the contents of that building. When Great Lakes investigated the claim, it discovered that Queen's home was on an eight acre parcel. Queen's application for the insurance, which was completed by his independent agent but signed by him, indicates a response of "no" to a question that specifically asked whether the property to be insured was on more than five acres. Great Lakes submitted an uncontroverted affidavit that the policy would never have been issued had that question been answered "yes." Based on the present record and applicable Georgia law, the Court can only conclude that Queen made a material

misrepresentation on the application through his agent. Accordingly, his policy may be rescinded even though Queen thought he was only insuring his house and the outbuilding that sat on less than five acres of his entire eight acre parcel. Great Lakes's motion for summary judgment on its declaratory relief claim (ECF No. 10) is granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

Viewed in the light most favorable to Queen, the record reveals the following.

Queen owns the property located at 1213 Old Monroe Madison Highway in Monroe, Georgia. His mother previously owned the

property, which was divided into four tracts. When Queen's mother died, Queen inherited tracts 3 and 4, and Queen and his sister jointly inherited tracts 1 and 2. Queen's sister later deeded Queen her interest in tracts 1 and 2; Queen now owns the entire parcel located at 1213 Old Monroe Madison Highway. The parcel is approximately 8.2 acres.

After Queen became the owner of the property located at 1213 Old Monroe Madison Highway, he sought insurance coverage. He retained Mike Sorrells, an independent insurance agent with Alfa Agency, to procure homeowners insurance. Queen told Sorrells that he wanted to insure the dwelling and outbuilding on one of the tracts within the entire parcel at 1213 Old Monroe Madison Highway. That particular tract was less than five acres. Queen "was aware that if he sought coverage for the entirety of his property, he would have been required to pay an additional premium and procure a different type of insurance coverage." Pl.'s Mot. for Summ. J. Ex. 6, Letter from Eric Miller to Ann Kirk (Oct. 29, 2015), ECF No. 10-8.

Sorrells completed an insurance application on behalf of Queen. The application states that the "location address" is 1213 Old Monroe Madison, Monroe Georgia. Pl.'s Mot. for Summ. J. Ex. 5, Personal Prop. Application 1, ECF No. 10-7. The application does not indicate that coverage is only sought for a certain tract within the parcel located at 1213 Old Monroe

3

Madison Highway. *See generally id.* The application asks: "Is the property situated on more than five acres?" *Id.* at 2. Sorrells checked "no." *Id.* Queen signed the application, stating that he had reviewed the application and declaring that the statements in the application were true, to the best of his knowledge. *Id.*

Southern Insurance Underwriters, Inc. acts as managing general agent for Great Lakes and issues policies on behalf of Great Lakes pursuant to certain underwriting guidelines. Southern Insurance relied on Queen's application in deciding whether to issue Queen a policy and on what terms. Pl.'s Mot. for Summ. J. Ex. 7, Brennan Aff. ¶ 10, ECF No. 10-9. Southern Insurance also relied on the information provided in Queen's application in deciding whether to renew Queen's policy. Great Lakes submitted uncontroverted evidence that if Queen had disclosed that the insured location was more than five acres, Southern Insurance "could not have originally issued the Policy or continued coverage under the Policy." *Id.* ¶ 11. Instead, Southern Insurance "would have charged a different premium, offered different coverage, or written coverage under a different insurance carrier." *Id.* ¶ 12. Queen presented no evidence to contradict this assertion.

The policy issued by Great Lakes to Queen states that the "insurance applies to the Described Location" and states that

4

the "Insured Location" is "SAME AS ABOVE"—meaning Queen's address of 1213 Old Monroe Madison Highway. Pl.'s Mot. for Summ. J. Ex. 8, Certificate of Ins. 1, ECF No. 10-10 at 2. Queen does not dispute that the property identified by this address exceeds five acres. The policy states that it "will be voidable if . . . any 'insured', their agent or their broker . . . intentionally conceals or misrepresents any material fact or circumstance . . . relating to the insurance provided under any part of this policy." *Id.* at 14, ECF No. 10-10 at 15.

During the coverage period, a shed on Queen's property caught fire, and the contents of the shed were destroyed. Queen claims that the destroyed personal property was worth $120,000. This shed is near Queen's house, and the house and shed both sit on a tract that is less than five acres. But when that tract is combined with adjacent tracts owned by Queen, which have the same address as the tract upon which the house and outbuilding sit, the total acreage associated with the insured "address" exceeds five acres. Queen submitted a claim to Great Lakes. While investigating the claim, Great Lakes discovered that the parcel located at 1213 Old Monroe Madison Highway is greater than five acres. Based on that discovery, Great Lakes concluded that Queen had made a material misrepresentation in his insurance application and rescinded the policy. Great Lakes tendered to Queen a refund of all the premiums he had paid for

5

the policy. Queen continued to seek payment under the policy, and Great Lakes filed this action, seeking a declaration that it properly rescinded the policy and thus has no obligation under the policy.

DISCUSSION

To void Queen's insurance policy, Great Lakes "must demonstrate both that [Queen] made false representations and that the misrepresentations were material from the view of a prudent insurer." *Lively v. S. Heritage Ins. Co.*, 568 S.E.2d 98, 100 (Ga. Ct. App. 2002). Queen contends that questions of fact exist for a jury to decide and that summary judgment is thus improper. Queen makes two arguments in support of this position. First, he contends that there was no misrepresentation in his insurance application. Second, he argues that even if there was a misrepresentation, it was not material.

**I. Was There a Misrepresentation in Queen's Application?**

Queen's main argument is that he did not make a misrepresentation in his insurance application. Queen contends that the insurance application is ambiguous in asking whether "the property" is situated on more than five acres. Queen argues that a jury must resolve this issue. He asserts that "the property" could be construed to be on fewer than five acres because he only intended to insure one of the tracts located on

the parcel at 1213 Old Monroe Madison Highway; if the application question is construed this way, then he did not make a misrepresentation.

Construction of an insurance contract (or application) is generally a question of law for the Court. *Nationwide Mut. Fire Ins. Co. v. Somers*, 591 S.E.2d 430, 433 (Ga. Ct. App. 2003). If the terms are unambiguous, then the insurance provision must be enforced as written. *Great Lakes Reinsurance (UK) PLC v. Kan-Do, Inc.*, 639 F. App'x 599, 602 (11th Cir. 2016) (per curiam). "Ambiguity exists in an insurance policy when its terms are susceptible to different reasonable interpretations." *Id.* at 603. Here, the Court finds that even though Queen may not have fully understood the question in the application, it is not ambiguous.

The application asks if "the property" is situated on more than five acres. Though "the property" is not defined, its plain meaning is the property for which coverage is sought based on the face of the application. The application also asks for a "location address" of the property to be insured. Queen's application states that the "location address" for the property to be insured is 1213 Old Monroe Madison Highway, Monroe Georgia. Personal Prop. Application 1. The undisputed evidence in the present record indicates that the property associated with this insured location address exceeded five acres.

7

Whatever Queen subjectively believed about his request for insurance coverage, nothing in his application communicates that he sought to procure insurance only for a certain tract within the parcel at 1213 Old Monroe Madison Highway.  Rather, the application on its face unambiguously seeks coverage for the property located at 1213 Old Monroe Madison.  And that is how the policy was issued; the insured location is 1213 Old Monroe Madison Highway, which is approximately 8.2 acres.  Thus, it was a misrepresentation to state that the property was not situated on more than five acres.  The fact that Queen may have had no intention to mislead anyone has no legal significance in the present context, which the Court finds to be a bit harsh but the law.

**II.   Was the Misrepresentation Material?**

Queen contends that even if there was a misrepresentation about the acreage of 1213 Old Monroe Madison Highway, it was not a material misrepresentation.  A misrepresentation in an insurance application "shall not prevent recovery" under an insurance policy unless it is "[m]aterial either to the acceptance of the risk or to the hazard assumed by the insurer" or "[t]he insurer in good faith would either not have issued the policy or contract or would not have issued a policy or contract in as large an amount or at the premium rate as applied for or would not have provided coverage with respect to the hazard

8

resulting in the loss if the true facts had been known to the insurer as required either by the application for the policy or contract or otherwise." O.C.G.A. § 33-24-7(b).

Great Lakes contends that Queen's misrepresentation regarding the number of acres of the location to be insured was material. In support of this assertion, Great Lakes points to the affidavit of Dianne Brennan, an underwriting manager at Southern Insurance, the managing general agent for Great Lakes with regard to Queen's policy. According to Brennan, if Queen "had disclosed that the Property was greater than five acres, [Southern Insurance] could not have originally issued the Policy or continued coverage under the Policy." Brennan Aff. ¶ 11. And if "Queen had disclosed that the Property was greater than five acres, [Southern Insurance] would have charged a different premium, offered different coverage, or written coverage under a different insurance carrier." *Id.* ¶ 12. Finally, according to Brennan, Queen's misrepresentation about the size of the insured location "changed the nature, extent, and character of the risk." *Id.* ¶ 13.

"Ordinarily it is a jury question as to whether a misrepresentation is material, but where the evidence excludes every reasonable inference except that it was material, it is a question of law for the court." *Taylor v. Ga. Int'l Life Ins. Co.*, 427 S.E.2d 833, 834 (Ga. Ct. App. 1993) (quoting *Miller v.*

9

*Nationwide Ins. Co.*, 415 S.E.2d 700, 701 (Ga. Ct. App. 1992)). In *Taylor*, for example, the insurance company was entitled to summary judgment on the issue of materiality because the plaintiff did not refute the insurance company's evidence that it would not have issued a life insurance policy to the insured had she disclosed her history of heart disease. *Id.* at 834-35.

Here, Brennan's affidavit is not particularly persuasive as to why the additional three acres would have made much difference from an underwriting increased risk perspective. Great Lakes knew it was insuring the building that contained the contents that were damaged. That building, along with Queen's house, sat on less than five acres. Had Queen produced an affidavit from a qualified person that contradicted the Brennan affidavit, it is likely that a genuine dispute would have been created and summary judgment avoided. *Cf. Lively*, 568 S.E.2d at 100 (reversing summary judgment against insured because insured presented expert testimony that the insured's misrepresentations would not automatically preclude a prudent insurer from issuing the policy as written). But Queen submitted no such affidavit or other evidence on materiality. He presented no evidence suggesting that Southern Insurance did not rely on his application in determining the terms of his policy, and he did not present any evidence that a prudent insurer would have

10

issued the policy even if it had known of the misrepresentation. Brennan's affidavit was essentially uncontested.

The Georgia courts generally find that summary judgment may be granted on the materiality issue based on the uncontroverted affidavit of an insurance company's representative establishing that the policy would not have been written as issued had the insurance company known of the misrepresentation. *See, e.g., T.J. Blake Trucking, Inc. v. Alea London, Ltd.*, 643 S.E.2d 762, 762-63 (Ga. Ct. App. 2007) (finding, based on an uncontroverted affidavit, that the insurer would not have issued the truck insurance policy as written had the insured disclosed that one of her dump truck drivers had a number of driving violations, including a suspended license and several reckless driving charges); *Graphic Arts Mut. Ins. Co. v. Pritchett*, 469 S.E.2d 199, 202 (Ga. Ct. App. 1995) (approving summary judgment in favor of insurer where insurer presented uncontroverted evidence that under its underwriting guidelines, the insurer would not have issued a policy to an applicant who failed to disclose that two other insurers had canceled the applicant's policies); *Davis v. John Hancock Mut. Life Ins. Co.*, 413 S.E.2d 224, 226 (Ga. Ct. App. 1991) (affirming summary judgment where the insurer presented uncontroverted evidence that it would not have issued the insured's life insurance policy had she disclosed that she suffered from incurable leukemia). *But see Case v. RGA Ins.*

*Servs.*, 521 S.E.2d 32, 34 (Ga. Ct. App. 1999) (reversing summary judgment in part because the only evidence on materiality was an expert underwriter's opinion testimony that the company would not have issued the policy had it known the insured's true driving history and in part because there was evidence suggesting that the insurance company did not rely on the insured's application). Without some evidence from Queen to create a genuine fact dispute on the issue of materiality, Great Lakes is entitled to summary judgment on this issue.

## CONCLUSION

In summary, based on the present record, there is no genuine fact dispute that Queen, through his agent Sorrells, misrepresented the size of the insured location in Queen's insurance application. There is also no genuine fact dispute that the misrepresentation was material. Accordingly, Great Lakes was entitled to rescind the policy. Great Lakes's summary judgment motion (ECF No. 10) is therefore granted.

IT IS SO ORDERED, this 23rd day of January, 2017.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA